May it please the court, Christy Schubert on behalf of John Lusteau. In light of the recent decision by the Louisiana Supreme Court in TS, I'd like to spend my time today focusing on the three reasons why we believe this court should not hear and should not decide the constitutionality of Act 322 and Act 386. The first reason has to do with the ruling in TS itself. TS is a sister case to Lusteau. We have the same defendant, Holy Cross, same perpetrator, Brother Stanley Rappucci. Both cases involved abuse that occurred prior to 1993 and both cases were filed solely under Act 322. Neither was filed under 386 because 386 didn't exist when those cases were filed. The court in TS ruled that Act 322 does not revive pre-1993 childhood sexual abuse claims. So Mr. Lusteau's case, as it stands before this court today, is prescribed. It is time barred. So does that resolve the whole appeal? What we believe that does is the goal of this court, of course, is to rule as it believes the Louisiana Supreme Court would. In TS, the Louisiana Supreme Court ruled that the case had to be remanded, well, that the trial court decision had to be vacated because, of course, it was wrong on the statutory grounds of 1993 and therefore the constitutional avoidance principle suggests that it that it was wrong for ruling on constitutionality at all. So there's no constitutional issue left for 322 because the Louisiana court has told us how to the Constitution. We agree that as applies to Mr. Lusteau's case, Act 322 does not revive it, so there is no constitutional issue with respect to Act 322 applying to Mr. Lusteau's case. However, the Louisiana Supreme Court specifically said it doesn't revive pre-1993 cases. It's still open for whether it revives post-1993 abuse cases. But what we would, speaking as to what this court should do, we know that the Louisiana Supreme Court ruled that when a case is pre-1993 abuse, was filed under Act 322, it would be improper to rule on the constitutionality of Act 322 or 386. And what the court should do is remand the case, vacate the trial court decision, send it back to the trial court with instructions for the plaintiff to amend their complaint to add allegations under 386. Why would we give those instructions? Why wouldn't we just deal with the thing before us? And if the district court wants to let the amendment take place, then that's, I mean, we would vacate. But why would we give specific instructions to allow amendment and all of that? I don't understand that. The Louisiana law says that when a complaint has a deficiency on its face, but that deficiency is curable, the plaintiff must be given an opportunity to amend their complaint. Right. But we don't have to give the instructions, do we? The district court, you would argue that before the district court and say, we vacate this, if that were correct. I'm not assuming, I'm assuming arguendo. And send it back in the district, then you'd argue to the district court, well, we need a chance under Louisiana law to plead the other article. Sure. We would say, if the goal is to do what the Louisiana Supreme Court would do, that is what the Louisiana Supreme Court did. It's remand with instruction to amend. Whether or not this court gives instruction to amend, I believe that the key part of this is that we know without a shadow of a doubt that the district court's ruling on constitutionality was error and should be vacated. And this case should be remanded. And once there, LUSTA will have an opportunity to amend the complaint. The second reason why we believe this court should not rule on constitutionality is the Thibodeau abstention doctrine. This doctrine says that a federal court should not rule on the constitutionality of a state law under the state constitution when it involves a matter of vital concern to the state and when it is closely connected to the state sovereignty. If it believes and if the state's highest Supreme Court is expected to issue a ruling on that same law. I don't understand how we would rule on constitutionality in any event. Maybe this is a question for your friend on the other side. Because there is no claim that implicates the Louisiana Constitution at this point. It's only the old claim left. And the old claim doesn't implicate the Louisiana Constitution relation back issues because the Louisiana Supreme Court just told us this in TS. So why on earth would we be adjudicating a hypothetical constitutional issue that's not even presented by the complaint before us? We agree, Your Honor. We agree that it would be, based on what the Supreme Court has said, it would be improper to issue any constitutionality ruling on the state. If we were going to give any constitutional ruling, it would be that, consistent with TS, it does not implicate the Louisiana Constitution. That would be the only constitutional ruling we would give. But that would just be saying, parroting back what is already from TS. I understand, Your Honor. In light of that, I mean, if you're saying that— I'm not speaking for the panel. I'm just asking you questions. Okay. I agree that the Constitution is not implicated in Mr. Lusto's claim. To the extent that this Court believes that it is, the Thibodeau abstention doctrine would prevent this Court from ruling on it anyways, regardless of whether constitutionality is or is not before the Court. What the Thibodeau abstention doctrine says is that because the state's highest Supreme Court is expected to rule on it, the parties in federal litigation deserve the right to have the benefit of that state court ruling. For instance, in this case, if this Court were to strike down the law as unconstitutional, and then the Louisiana Supreme Court upholds it afterwards, Mr. Lusto would be possibly the only man who has his childhood sexual abuse claim in Louisiana not revived. Or, the Archdiocese of New Orleans has, in fact, filed an amicus brief that argued that the nearly 500 sexual abuse victims that made claims against them in the bankruptcy would be affected by your ruling. So, in that case, it could be Mr. Lusto and the nearly 500 sexual abuse victims that made complaints against the Archdiocese. Would we strike down as unconstitutional that's before us? Holy Cross has asked this Court to strike down both Act 322 and Act 386. Act 386 is not in the complaint. I agree, Your Honor. The Thibodeau abstention doctrine also says that you should consider whether this—the question before you—involves state sovereignty. Well, the district court ruling basically said that due process clause and vested rights trump the police power of the state. That when it comes to the due process clause, if absolutely bars the legislature from disturbing those vested rights. Denying the legislature the police power use is extremely close to state sovereignty. The Louisiana Supreme Court has explained in Portery v. Walmsley, 1935, that the police power is the very soul and essence of the state, and that if courts take that away, it could destroy the state itself. The ruling issued by the district court is also a vital concern because of its far-reaching effects. Specifically, in addition to violating Article 1, Section 4 of the Louisiana Constitution, which says that all property, regardless of any species of property, regardless of vested, all property is held subject to the police power. But also, it would—the ruling from the district court invalidates other laws that have already been issued, besides just Act 322 and Act 386. In the past 30 years, Louisiana has enacted laws that revived previously prescribed claims at least seven times. Most of these were in situations where there was a hurricane or a flood, and it turned out to be extremely devastating, and so the legislature would say, okay, well, you know, it's May 1st now. This event happened on April 1st. When it happened up through now, May 1st, anything that prescribed during that time, liberative or preemptive prescription, is all revived and also extended another one month, two months, whatever they say. This ruling would make—the ruling by the district court would invalidate that kind of management of hurricane case—of hurricanes, and of course, basically, it would hamstring the legislature in how it can deal with natural disasters and it also alters the landscape of the Due Process Clause jurisdiction. The legislature always has the option of extending its prescriptive periods prospectively for—if hurricanes are a problem, we know there's going to be more hurricanes, so that's an easy fix. We're not going to be responsible for what the legislature does or doesn't do on that. The legislature does—I agree—does have the power to prospectively suspend it. However, the legislature doesn't always know when a natural disaster is going to hit. They are sometimes unexpected, and they're unable to meet and get a law passed prior to the disaster occurring. That's why it usually occurs within a week or two weeks after the disaster, because it's not until the disaster happens that you know that it was bad enough that you need to deal with the prescription issue, because parties weren't able to bring it in. And typically—in fact, I think in every case—they've applied these revivals statewide, even when the hurricane or flood only affected a particular local area. In terms of how the ruling changes the Louisiana landscape of Due Process Jurisdiction, no Louisiana court has ever held before that the Due Process Clause absolutely bars the legislature from exercising its police power. Here's what the Louisiana Supreme Court has said about the Due Process Clause, vested rights, and police power. In Portery v. Walmsley, it said that the clauses of the Louisiana Constitution which protect—which promise due process and which protect impairment of vested rights must yield and always have yielded to the state's police power. In Shreveport, it states that vested rights can be taken or destroyed, and in Parker it said property rights are not absolute. They can be taken or destroyed by the state's police power. The term vested rights does not just apply to prescription. It applies to basically everything capable of ownership. The Supreme Court has said that—the Louisiana Supreme Court has said that it can arise—vested rights can arise from a contract, statute, or operation of law. Most things you can have a vested right in—a home, a car, livestock, this pen—anything is a vested right if you own it completely without contingency. But the district court has said the legislature can't touch any of that. Its police power is completely barred. The third reason that we would ask this court not to rule on constitutionality is because there is the availability of certifying the question. A state is not supposed to rule on—sorry, a federal court is not supposed to rule on state constitutionality unless it is an unavoidable last resort. What question would we possibly certify on this complaint? I believe the appropriate questions to certify in this complaint would be does the Louisiana legislature have the power to revive previously time-barred childhood sexual abuse claims, and also pursuant to Campbell and Chase. Under what—you're talking again about the 386, aren't you? I'm talking—I believe the court has the ability to frame the question in a way that it would lead to an answer that is helpful to them. Even if this court remands—vacates and remands, then there will be a new ruling, and if it comes back up, and the Louisiana— Later, you would make that argument if that was appeal, if that all happened. None of that has happened yet. We agree, Your Honor. We would be satisfied with this court vacating the district court's ruling and remanding us back to the district court. We shouldn't take up the Supreme Court's time with questions that are not even implicated by the live pleadings, should we? One of the reasons that this could be helpful is the Louisiana Supreme Court kind of lamented the fact that it can't rule on this specific—on T.S. It couldn't rule on T.S. It can't rule here either, because there's no claim presented on that yet. My understanding is that the court, this court, could style the question in such a way as would lead to a useful answer if the Louisiana Supreme Court determines that it doesn't want to take it up. Of course, it doesn't have to take up the certified question. We can only talk about 322, and we already have the answer on that. We agree, Your Honor, that the district court ruling got it wrong, should be vacated and overturned, and that's exactly what we would ask this court to do. And I believe my time is up, and so I will . . . Yes, you've saved time for rebuttal. Thank you, Ms. Schubert. Mr. Atkinson? May it please the Court, Ian Atkinson on behalf of Holy Cross and Holy Cross College. Judge Elrod, if I could begin by speaking to your point of what should we do now. I think that there is, you know, there's no dispute that this court is bound by the Louisiana Supreme Court's statutory interpretation of Article 322. You know, whether this court has to now remand the case for what would amount to be a feudal amendment by the district court, you know, that is . . . that procedural question I don't believe is a question that is settled by state law. That is a question of judicial administration for this court to decide. Why wouldn't we just remand and say, just hypothetically, why wouldn't it be fair to say, we vacate CTS for further proceedings consistent with TS in this opinion? And then you make whatever arguments to the district court that are left or motions and that sort of thing. I have a couple of rejoinders to that, Your Honor. You know, the first being that, you know, this does typically arise in the mootness context. You know, there are cases on that where what will happen is a plaintiff will file a case challenging a statute. You know, while that case is pending, then the legislature will go out and they will amend the statute to, you know, purportedly solve the issue, right? And in those circumstances, the court doesn't ask, you know, well, do we need to remand the case to make sure that the relevant statute is mentioned in the petition, right? I mean, what the court asks in those cases is, do we still have a live dispute? You know, has this amendment mooted the issue? We have a live dispute. We certainly do, Your Honor, because the statutory provision that is in both Article 322 and 326 is exactly the same. We weren't asked about, no one's been asked about 326. We don't litigate over things that are not in the complaint. Well, what the law is clear, actually, is that this court applies the law that is currently in effect, applies the law that is currently in effect, unless there would be prejudice to the parties. And that's what we're asking the court to do, the law currently in effect. No one asked us to do 320—I mean, I'm sorry, 360—386. No one asked anyone to do 386. So why on earth would we reach out in the first instance in the Court of Appeals to start weighing in on something that's not before us? If there was any dispute that this plaintiff was not entitled to take advantage of 326, that might be one thing. But there's not. 386, you mean? 386. If there was any dispute about that, then maybe. Or if, for example, there was any substantive change to the revival provision whatsoever, if there was any change to it. And the district court hasn't yet reviewed 386. I mean, hasn't yet viewed it. So we shouldn't review it before it's been viewed, when it's not even live. I guess I would quibble with that. I think that the district court has reviewed the provision in all meaningful respects. It's the exact same provision. There is no dispute about that. Okay. Did the district court ever say 386 or say under the current statute? I mean, unquestionably, the district court reviewed 322. It did not review 386. No. Shouldn't the district court have the first shot of 386 if and when it becomes a live claim? Well, of course the district court was aware of 326 and referenced it throughout his opinion. Sorry, 386. And I apologize for that, Your Honor. So this really is not a case in which the district court didn't know about this statute that had been amended in any meaningful respect. So earlier, Judge Elrod asked you, what should we do? And I still don't think I've heard an answer to that. Your brief said we should affirm. What are you telling us today that we should do? What is the result that we should reach? Or what would the last two or three sentences of our opinion say if you were writing them? To affirm the district court. To reach the constitutional issue as the district court did and to affirm what the district court decided. That is a relief that we would request. How could we possibly affirm the district court when the Louisiana Supreme Court, of which we're bound in an Erie case, has held directly to the contrary? Well, I mean, there's really two questions. I mean, they've held to the contrary on the statutory interpretation question. Right. But that has been removed. That is a mood issue. The article has been amended to now take out what the Louisiana Supreme Court decided upon. And, of course, that was the point of them amending the statute. The Louisiana legislature saw that there was litigation such as this one, such as the TS case, that had attacked the revival provision, and saying that the revival provision as a statutory matter does not apply to pre-1993 cases. They wanted to eliminate that whatsoever, and they did, but they left the revival provision alone. Right. But what does the district court opinion hold? The district court opinion strikes down Article 322. Right. That's correct. The district court opinion strikes down Article 322 on constitutional law grounds. Specifically. Right? That's correct. Okay. The Louisiana Supreme Court has said that if you interpret it correctly, it does not implicate the Constitution. We have to follow the Louisiana Supreme Court on Louisiana law. So on what world could we affirm that holding by the district court? Well, again, the only thing I can point you to is the mootness cases that this court has repeatedly decided, which has said when there is an amendment to a statute, you look to whether there is still a live controversy. And you also apply the law that is currently in effect. The law that is currently in effect is Article 386. That is a provision that has been fully briefed. That is a provision that the district court in substance has already ruled on. You would be asking us, I think, I'm not trying to put words in your mouth, but I'm trying to understand this. We do have the general proposition that we can affirm on any ground that appears in the record. That's irrespective of whether it was anything that was raised by either party or addressed by the district court. It sounds to me as though that's what you're asking us to do, that regardless of what was raised or considered, if we look at this record and at the law, we can affirm. I'm not suggesting we will do that or that we should, but I'm trying to understand your argument. That I think is correct, Your Honor. Certainly you could look at it that way. You could also say that the statutory argument has been waived. But really the gist of my argument is that the only live controversy in this case is the constitutionality of the revival provision. That's the only issue that needs to be solved. Even if it's not in the case, actually, on the complaint. It's not been amended by any action. In the federal system, the federal system is a notice pleading state. The plaintiff was never required to mention that statute at all. The plaintiff could have come into court and just said, I was sexually abused in 1968. And that would have been sufficient. The fact that that statute is listed in the complaint from a notice pleading perspective is irrelevant. It's there for sure. But that plaintiff is entitled to the benefit of the laws that were enacted. I'm happy to address the merits of the case if you would think it's productive. It's completely up to you. You have ten minutes. You don't have to use any of them or you can use all of them. That's completely up to you as long as you don't repeat what you've already said. I promise that I won't. I will keep it brief, Your Honor. The reason that we are asking this court to hear this case is because we believe that the law is actually quite clear from the Louisiana Supreme Court. The Louisiana Supreme Court has said on a number of occasions that revival is not allowed under the Louisiana Constitution. In the Elevating Votes case, it said that the legislature is without the authority to revive a prescribed claim. In Hall v. Hall, the court struck down the revival of a child sexual abuse case just like this one. If these cases were isolated statements of the Louisiana Supreme Court, maybe they could be distinguished as dicta or distinguished on the facts, but they are not. In fact, these cases are a part of and they are consistent with a huge body of law, unvested rights generally, that the Louisiana Supreme Court has continually upheld and has upheld as recently as the Lewis case last year. The gist of Lusteau's argument is that these cases have been eroded by cases like Chance and by All Property. We believe that's an over-reading of those cases. Chance, in particular, is notable because it said for the first time that the Louisiana Supreme Court would require a clear statement of legislative intent as to revival as a prerequisite to addressing the issue, but it was clear about why it was doing that. The court said that we will be doing this because we have this rigid and longstanding policy of not addressing constitutional issues unless it's necessary. Of course, that was one of the reasons why the T.S. case came out the way that it did. Our position is that Louisiana law is clear on this issue. The Louisiana Supreme Court has said repeatedly that prescription is a vested right, is protected, and that the revival of any prescription period is unconstitutional. And you would have the right to argue any of that should there be any further litigation. My assumption is that this case will be remanded, that they'll request an amendment, and it would have to be denied as futile. But we've, of course, already made those arguments before the district court, and I assume we would be entitled to make them again. So the court would have to rule on them, and then you could appeal if you don't like that. And if you think it needs to be decided on the constitutional issue, then it would be decided. Of course, of course, Your Honor. If there aren't any further questions, then we would ask that the court affirm. Thank you. Thank you, Mr. Atkinson. Ms. Schubert, you've saved some time for rebuttal. Yes, Your Honor. I'll only briefly address a few things that were brought up. One is counsel has suggested that it would be futile to amend the complaint to add claims under Act 386. I know of no reason for assuming that would be futile. The Louisiana Supreme Court did not say that 386 doesn't apply to pre-1993 claims. In fact, it suggested in its answer that it appears to have revived all claims. So we do not believe that that would be futile at all. I would also say that I agree that this case is not, that 386 is not properly before the court. And this court, as the Supreme Court described, it would be improper for this court to supply a 386 defense when 386 isn't before it. The defendant themselves has to supply the 386 defense. And they obviously couldn't do that in this case. And, in fact, discussing Mr. Atkinson, if I understood his presentation, is that we have notice pleading in the federal courts and that you didn't even have to specifically mention or designate or identify one statute or another as long as you were stating a plausible claim. I would say the Louisiana Supreme Court has indicated that they consider this to be a substantive matter, that the defendant has to plead their prescription defense. And in this case, the defendant did plead a prescription defense. I don't think you're addressing my question. My question is really a question of federal procedure and not State procedure or State substance. So do you need me to rephrase the question, or are you ready to answer it? If you'd like to rephrase the question, that would be helpful. Thank you. If I understood Mr. Atkinson's presentation, I'm not suggesting whether I agree or disagree. He said that in federal court, federal district court, we have notice pleading and that as long as you've presented a plausible claim, I don't think he used the word plausible, but as long as you've presented a plausible claim and sufficient facts to support a plausible claim, that you, as the plaintiff, are not required to identify a particular statute or a number of statutes in order to be able to present your claim. So the suggestion, as I understood him, is that if he's right, then 386 is in the case despite the fact that you didn't plead it. Your Honor, when the district court signed its opinion, 386 did not exist. We now know that that means when he signed his opinion, this claim was prescribed, and that's the ruling that we're here to appeal. So when that was signed, there was no 386 to revive it. 386 was passed into law and signed into law after the district court's ruling. So this case, when this ruling was made, was absolutely prescribed. And so I would argue that because it was prescribed when the ruling was made, that ruling has to be vacated, and we can then amend it to try to move forward. Does the Court have any other further questions? All right. Thank you, Ms. Schubert. Your case is under submission. Thank you, Your Honor. Last case for today, N. Ray Jefferson Parish.